DISSENTING OPINION.
McFarland, J.,
delivered the following dissenting opinion:
On the 6th of January, 1868, J. IT. McCain deposited in the Gayoso Bank at Memphis $1,851.04, in the name- of J. H. & E. J. McCain, E. J. McCain being his wife; $50 was checked out., leaving $1,801.04. On the 16th of January, 1868, J. M. Hill made oath before the clerk of the law court of Memphis, that J. H. McCain was justly indebted to the firm of ITil], Cossitt & Talmage in a sum stated, and that he was a nonresident, or was about to remove himself or his property out of the state, or was concealing" or about fraudulently to dispose of his property. Bpon this a general attachment issued against the estate of J. H. McCain, as we presume, though it does not appear in the record. The record, however, shows what appears to be the return of the sheriff on tire attachment, to wit: “Came to hand on the 16th of January, 1868. There being no property of the defendant in my county on which to levy this attachment, I did on the. 16th of January, 1S68, attach 'in the hands of John C. I.anier, president of the Gayoso Savings Institution, all of the credits and ‘effects of the defendant in said bank.” Signed by the sheriff. There also> appears a replevy bond executed by J. IT. McCain and sureties, and an order of the clerk on the first of February, 1868, to the sheriff to release the levy.
The Gayoso Bank failed in February, 1868, and the fund was lost, and this bill was filed by E. J. McCain, by J. H. McCain -as her next friend, claiming that the fund was her separate estate, and seeking to hold Cossitt, Hill & TaL-■mage liable for its loss, by reason of their having wrongfully attached the same, and thereby preventing her from *664 withdrawing it before the bank failed. She has established, by proof, that $1,500 of the fund belonged to her, but as to the balance the proof fails, and this balance must be taken to be the funds of the husband, J. H. McCain.
The question is, whether or not the act of the defendants in procuring the issuance of the attachment and the service of the above garnishment, was a conversion of that part of the fund shown to belong to Mrs. McCain, or such a wrongful act causing the loss of the fund that they should be held liable therefor.
It seems to me clear that the attachment was properly issued, and the sendee of the garnishment was proper, as it is clear that part of the deposit belonged to McCain, the debtor.
But it is argued that it is wrongful to levy upon the entire fund, and thereby impound it in the bank, and prevent the complainant from withdrawing it before the bank failed.
The question is whether the entire fund was levied on. It will be borne in mind that the attachment was at law against the estate of J. IT. McCain generally. While this particular fund was probably in the minds of the parties, it is not referred to in the affidavit; there is no prayer to attach it. Under this it was the duty of the sheriff to ¡attach the estate of J. II. McCain, or summon his debtor or those having his effects in their hands to appear and answer. The sheriff attempted to summon the bank to answer as garnishee, and for the argument it may be conceded that this was properly done. The action of the sheriff could certainly be nothing more than a summons on the bank to appear and answer as garnishee. The sheriff did not actually attach or take any funds into his possession. Neither J. H. & E. J. McCain had any particular funds in bank, but the bank was their debtor for the amount of the deposit. Now, what was the legal effect of the services of the garnishment upon the bank, to appear and answer whether or not it was *665 indebted to J. H. McOajn or bad any of bis effects in its hands? This would have the effect to prevent tlie bank from paying to J. H. McCain anything it might owe him after the service of the garnishment, but certainly would not have the effect to prevent the bank from paying E. J. McCain anything the hank might owe her. But it is said the bank, not knowing to whom the fund actually belonged, might rightfully retain it all until the question was determined. Tf this were so, I would hold that, as the complainant and her agent axe responsible for the fund being so deposited as to raise this doubt, that the consequence of this should fall upon her. But it should again be remembered that the answer of the bank as garnishee would have been conclusive. This answer could not have been contradicted, and unless the bank had admitted an indebtedness to> J. H. McCain, there could have been no judgment against it. If the bank had answered that it did not know to whom the .fund belonged, and made such a statement as to leave the matter uncertain, there could have been no judgment. This court held recently at this place, that the service, of a garnishment upon one indebted to the execution debtor in an amount sufficient to satisfy the execution, although the service of the garnishment may have operated to prevent the execution debtor from collecting from his debtor until the debt was lost by the latter’s insolvency [still thet execution creditor would not be liable for such loss].
An application to rehear this decision was refused. So that it seems to me cl ear,_ that the service of garnishment has no other effect than to impound in the hands of the garnishee wdiatever sum he may be willing to admit on oath he owes the execution or attachment debtor, or uffiat effects he may be whiling to admit he has in his hands belonging to such debtor. It is to my mind wholly different from an attachment proceeding in equity, where the particular fund might have been specially attached upon the allegation that it belonged to J. H. McCain, the debtor, the bank enjoined from paying it, and the question put in issue by the *666 pleadings as the ownership of the.funds. The question the,n would have been determined by proof, and if it had resulted that the attaching creditor had wrongfully impounded the fund by untruly alleging that it belonged to his debtor, he would be responsible for the loss.
But it is said that whatever may have been the legal effects of the seawice of the garnishment, the proof shows that in fact tire defendants intended to> attach the whole fund, and so directed the sheriff, and the bank understood the whole fund was attached. The proof in substance is, that after the failure of the bank, the defendants admitted that they had sued 'out the attachment at the instance of one Burford, who was the surety of J. H. McCain to them, and that they did it to test J. IT. McCain’s right to this particular fund. But how did they'propose to te¡st his right? Not by an attachment bill, alleging that the fund belonged to'J. IT. McCain, and specially attaching it, but by simply summoning the bank to answer whether it owed J. H. McCain anything, or had any of his effects. What harm could 'there be in this? Suppose they did think they could recover for the whole fund? Suppose they told the bank that they believed the whole deposit belonged to J. H. McCain? Had they not a right to test the question? And when they proposed to leave the whole matter for 'the bank to determine bv its answer, who could be injured? If the bank answered truly, Mrs. McCain could not- be injured; if it answered untruly the attaching creditors were not to blame. In short, here was a deposit in bank in the joint names of J. TI. & E. J. McCain. The. creditors of J. II. McCain believed that the deposit, or some part of it belonged to J. H. McCain, and in point of fact part of it did belong'to' him. To test this question the creditors summon the bank to answer as garnishee, and say how the fact is, and we are told that the creditors could not do this without making themselves liable for the whole deposit, in the event the bank chose to retain it all, and fail pending the garnish *667 ment proceedings. If this be true, bow could tbe creditors reach that part of tbe deposit that really did belong to' J. H. McCain, -without making themselves-liable for it all? Must the creditors tell the bank not to detain anything belonging to Mrs. McCain? The bank did not need to be told this, the law settled their duty. Should the creditors tell the bank what part of the fund belonged to J. IT. McCain, and what part to retain? It was simply because they did not know how the fact was that they summoned the bank to answer.
I am very clearly of the opinion that the complainant is not entitled to recover.'
Freeman, Judge, concurs in foregoing dissenting opinion.